**Debra A. REIDT, a/k/a Debra A. Marsolek, Plaintiff–Appellant,**

v.

**COUNTY OF TREMPEALEAU and County of Trempealeau Sheriff's Department, Defendants–Appellees.**

No. 91–3168.

United States Court of Appeals, Seventh Circuit.

Argued June 1, 1992.

Decided Sept. 23, 1992.

William A. Mattka, Whitehall, Wis. (argued), for plaintiff-appellant.

Bruce J. Kostner (argued), Kostner, Ward & Koslo, Richard A. Radcliffe, Arcadia, Wis., for defendants-appellees.

Before CUMMINGS, FLAUM, and MANION, Circuit Judges.

CUMMINGS, Circuit Judge.

Plaintiff Debra A. Reidt sued the Sheriff's Department of Wisconsin's Trempealeau County ("the Department") under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. She contends that the Department delayed her promotion from half-time traffic officer to full-time traffic officer because of her sex. After a bench trial, the district court dismissed with prejudice Reidt's disparate treatment claim, and dismissed without prejudice any claims based upon a disparate impact theory. Reidt subsequently filed a motion "for leave to amend complaint and supplementary trial." The court denied this motion and at the same time dismissed Reidt's disparate impact claim with prejudice. Reidt appeals the dismissal of her disparate impact claim, but does not challenge the dismissal of her disparate treatment claim.

I.

Reidt's central complaint concerns the effect of a new position created by the Department[1] known as a "hybrid" position, which is a half-time jailer and half-time road officer. Since its creation, the hybrid position has been filled only by males. Reidt contends that this new position, as it was applied, denied her advancement within the Department because of her sex. Reidt was hired as a part-time road officer, and her goal was to become a full-time road officer. Since road officers earned more than jailers, apparently some jailers also aspired to become road officers. "Hybrids" earned more than jailers but less than road officers.

There is some confusion in the record about whether the hybrid position was initially intended to be a male-only position, or whether it just happened that way in practice. The ambiguity in the record is caused largely by the Department's use of the term "jailer" in the description of the hybrid position. Some evidence in the record indicates that a jailer could be either male or female. For example, the statement of uncontested facts in the Joint Final Pre-Trial Report states that the Department employs four and one-half "female jailers" and four and one-half "male jailers." At trial, Lieutenant Daniel Schreiner testified that the hybrid position was meant to be sex-neutral. However, Schreiner also testified that "I recognize that the term 'jailer' as being a male term." Tr. at 123. Several other witnesses testified that a jailer was by definition male, and female employees with jail duties were known as "matrons." The Union agreements also distinguish between jailers and matrons. The district court stated that the "hybrid positions * * * were for male jailer positions as defined by the union contract." Tr. at 175.

Reidt was hired on December 1, 1984, as a half-time traffic officer. On or about

1. Reidt originally sued the County of Trempealeau Sheriff's Department. The district court added the County of Trempealeau as a defendant *sua sponte* when it dismissed Reidt's disparate treatment claims. Tr. at 176–177. For convenience, we will refer to both defendants as "the Department."

January 1, 1986, the defendants created the hybrid position. This new position was initially filled by Greg Anderson, who had previously been a full-time jailer.[2] Because of Anderson's seniority, Reidt does not complain about his placement in the initial hybrid position. On September 30, 1986, a full-time traffic officer position opened because of a retirement. Anderson was hired for this job and therefore his hybrid position became vacant. Reidt expressed interest in the vacant hybrid position, but was advised that she was ineligible for the job because of her sex.

Reidt was denied the opportunity to apply for the hybrid position because the Department maintained a strict policy of employing four and one-half female jailers (or matrons) and four and one-half male jailers. If Reidt had been hired to replace Anderson after his promotion to full-time traffic officer, this balance would have been upset. The Department apparently maintained this strict equality between male and female jailers in order to comply with the following state law:

> Whenever there is a prisoner in any jail there shall be at least one person of the same sex on duty who is wholly responsible to the sheriff or keeper for the custody, cleanliness, food and care of such prisoner.

Wis.Stat., § 302.41.

William Gilbertson, a full-time jailer, was hired to fill the hybrid vacancy created by Anderson's promotion on November 1, 1986. Terrence Daffinson, a part-time traffic officer hired on the same day as Reidt, had also applied for this vacancy. Because Gilbertson changed from a full-time jailer position to a position with half-time jail responsibilities, a half-time jailer opening remained. Daffinson was promoted to a hybrid position that incorporated this half-time jailer position on December 1, 1986. Reidt was told that she did not qualify for the hybrid positions filled by Gilbertson and Daffinson because of her sex.

Because of budget cuts, Reidt was laid off from January 1, 1987, through May 31, 1987. Gilbertson was returned to a full-time jailer position during this period because of the budget cuts. Daffinson was not laid off, despite being hired on the same date and for the same position as Reidt, because he had accumulated more seniority with his new hybrid position. Reidt returned to her part-time traffic officer position, and Gilbertson returned to his hybrid position, in June 1987. In July 1987, two new full-time jailers were hired, apparently to replace retiring jailers. In December 1987, a full-time traffic officer position became available. Reidt and Daffinson both applied for this position. Daffinson received the job, because of his seniority earned in the hybrid position. On January 1, 1988, one of the jailers was promoted to a hybrid position to replace Daffinson, a position for which Reidt applied despite being told again she did not qualify because of her sex. Reidt was eventually promoted to a full-time road officer position on March 1, 1989.

No female jailer resigned or requested a new position within the Department between December 1, 1984, and March 1, 1989. At the time of trial, 11 of the Department's 31 employees were female. Reidt was the only female employee with traffic or highway responsibilities during the period in question.

Reidt filed this class-action complaint in January 1991 after exhausting her administrative remedies. She alleged that the male-only hybrid position adopted by the Department "has had a disparate and discriminatory effect against females" and caused her to be passed over for promotions, all in violation of 42 U.S.C. § 2000e–5(f). On May 14, 1991, the district court denied the Department's motion for summary judgment but granted its motion to deny certification of a class.

After a one-day trial on June 6, 1991, the district court made oral findings of fact and law. The court found that the hybrid

---

2. Before the creation of the hybrid position, the Department employed five male jailers and four and one-half female jailers.

position was created by the Trempealeau County Board of Supervisors in order to comply with state law and the union contract, and because it thought the new position would allow for greater flexibility and for cost savings. The district court found that these reasons, even if they were perhaps misguided, were not pretextual and therefore Reidt had failed to prove that sex played a motivating factor in the decision to create the various hybrid positions. The court then stated:

> Having said all of that, the Court dismisses the Complaint without prejudice at this point because the Court has a nagging concern about this case and the way perhaps the Court has mistakenly believed it to be tried. * * * [A]lthough a disparate impact case may have been tried to this Court, it certainly wasn't recognizable by that evidence which was submitted today.
>
> And for the opportunity of counsel to address that position, if, indeed, that position is a viable position * * *, the Court at this time is dismissing the Complaint against the Defendants for disparate treatment with prejudice, but * * * at this time, all [other claims set forth in the Complaint], whatever they might be, are dismissed without prejudice. * * *
>
> The other claims that there may very well be in that file, in that Complaint, which either to the Court's satisfaction were not tried before it today or which, indeed, were tried but the Court didn't recognize them, the Court on those other matters will dismiss without prejudice and allow counsel to pursue their own devices.

Tr. at 182–185. Reidt subsequently filed notice of a motion for leave to amend complaint and supplementary trial, which attached a proposed amended complaint and an affidavit by Reidt. The papers submitted by Reidt did not indicate what additional facts she intended to prove in a supplementary trial, nor did they indicate how the evidence already in the record supported her claim under a disparate impact theory.

The district court denied Reidt's request and dismissed all her claims with prejudice in a written order filed August 13, 1991. The court stated that "Had plaintiff been of the opinion that she had presented evidence to support a disparate impact claim at trial, she would certainly have moved for a new trial under Rule 59, Federal Rules of Civil Procedure, presenting those reasons which she believed sufficient to persuade the court * * *." R. 46 at 2. Citing *Rossini v. Ogilvy & Mather*, 798 F.2d 590 (2d Cir.1986), and *Johnson v. Allyn & Bacon, Inc.*, 731 F.2d 64 (1st Cir.1984), certiorari denied, 469 U.S. 1018, 105 S.Ct. 433, 83 L.Ed.2d 359 the court concluded that Reidt was attempting to change her factual allegations, in that disparate impact involves practices facially neutral in practice and in intent, whereas disparate treatment involves proof of discriminatory motive.

## II.

Reidt argues that the district court erred by failing to find that the defendants' creation and use of the hybrid position had a disparate impact upon her in violation of Title VII. Reidt also asserts that the court erred by not allowing her to pursue a disparate impact theory in further proceedings. She specifically declines to appeal any aspect of the district court's dismissal of her disparate treatment claim. In particular, she declines to argue on appeal that sex is not a bona fide occupational qualification ("BFOQ") for either the jailer or the hybrid positions.

It appears that these should have been relevant issues at trial.[3] Reidt, how-

3. Section 703(e) of Title VII states that:

It shall not be an unlawful employment practice for an employer to hire and employ employees * * * on the basis of * * * sex * * * in those certain instances where * * * sex * * * is a bona fide occupational qualification reasonably necessary to the normal operation of that particular business or enterprise.

42 U.S.C. § 2000e–2(e). The BFOQ exception is recognized as very narrow, and only applies when the essence of the business operation would be undermined by not hiring members of one sex exclusively. *Torres v. Wisconsin Dep't of Health & Social Services*, 859 F.2d 1523, 1527 (7th Cir.1988) (en banc), certiorari denied, 489 U.S. 1017, 109 S.Ct. 1133, 103 L.Ed.2d 194.

ever, explicitly acknowledged that she was not challenging the Department's assertion that being male was a BFOQ for certain of its jailer positions. Tr. at 165. Reidt's counsel stated that he only "question[ed] the need to tie in traffic duties or responsibilities to the male jail duty." *Id.* This perhaps is an inartful argument that sex is not a BFOQ for the *hybrid* position. The district court did not discuss this argument in its oral findings. Instead, apparently treating this case as a "pretextual" disparate treatment case, the court held that the Department did not discriminate against Reidt on the basis of sex because it was motivated by cost savings, flexibility, and a desire to comply with state law when it created the hybrid position—even though the state law in question virtually guaranteed that sex would be a factor in a jail's hiring decisions.

 We believe that disparate treatment is the proper theory for analyzing the facts of this case, not disparate impact.[4] Under a disparate impact theory, liability is established when a facially neutral policy affects members of a protected class in a significantly discriminatory manner. *Dothard v. Rawlinson*, 433 U.S. 321, 329, 97 S.Ct. 2720, 2726, 53 L.Ed.2d 786; *Caviale v. Wisconsin Dep't of Health and Social Services*, 744 F.2d 1289, 1293 (7th Cir.1984). The Department's actions were facially discriminatory, not facially neutral. Reidt was not hired for any hybrid positions, and was therefore deprived of the chance to accrue seniority and become a full-time traffic officer, because of her sex. In short, the Department used sex as an explicit factor in filling its jailer and its hybrid positions.[5]

This is therefore a disparate treatment case involving a facially discriminatory employment policy. This type of disparate treatment case should be distinguished from the more typical disparate treatment

There is a relatively well-developed body of case law concerning the application of the BFOQ defense to jailers and other prison officials. See, *e.g., Dothard v. Rawlinson*, 433 U.S. 321, 97 S.Ct. 2720, 53 L.Ed.2d 786; *Torres; United States v. Gregory*, 818 F.2d 1114 (4th Cir.1987), certiorari denied, 484 U.S. 847, 108 S.Ct. 143, 98 L.Ed.2d 99; *Garrett v. Okaloosa County*, 734 F.2d 621 (11th Cir.1984); *Hardin v. Stynchcomb*, 691 F.2d 1364 (11th Cir.1982); *Gunther v. Iowa State Men's Reformatory*, 612 F.2d 1079 (8th Cir.1980), certiorari denied, 446 U.S. 966, 100 S.Ct. 2942, 64 L.Ed.2d 825. These cases recognize that Title VII's proscription against sexual discrimination in employment must be balanced against issues of inmate privacy and jail security in the context of the particular facts at hand. Stereotypical notions of a female's abilities, however, or unwarranted modesty, is not sufficient to justify a male-only position. *Torres*, 859 F.2d at 1527. Administrative convenience also cannot justify limiting a position to one sex. *Gunther*, 612 F.2d at 1082.

Because of the Supremacy clause, state laws regarding the care of male and female prisoners must give way to Title VII when necessary. See *Garrett*, 734 F.2d at 624 ("The mere fact that a state enacts a discriminatory regulation does not create a BFOQ defense."); Op.Wisc.Att'y Gen., No. 53–81 (October 2, 1981) (concluding that Title VII superseded predecessor to § 302.41 when female jailers did not perform strip- or pat-down searches of male prisoners and did not accompany or observe prisoners during toileting or bathing).

4. The Department incorrectly implies that disparate treatment and disparate impact theories can never be raised in one action. To the contrary, disparate treatment and disparate impact theories typically can be tried in a single trial, and the two theories are not inherently contradictory. *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335–336 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 ("Either theory may, of course, be applied to a particular set of facts"). Under the facts of this case, however, the disparate impact theory is inapplicable.

5. Whether the hybrid position was intended to apply to female jailers as well as male jailers does not alter this conclusion. That Reidt might have been able to obtain a hybrid position if a female jailer had resigned or had filled the initial hybrid position does not change the fact that the Department is using sex as a factor in its employment decisions. The Department's policy of tying hybrid positions to a specific gender "slot," whether male or female, is facially discriminatory. An analogous situation would be if an employer decided to hire males and females in alternating fashion. No matter its overall "neutrality," applicants under this scenario would be denied consideration because of their sex, and thus the policy would be facially discriminatory. Cf. *United States v. Starrett City Associates*, 840 F.2d 1096 (2d Cir.1988) (holding that apartment owner's policy of setting aside certain apartments for whites and others for blacks violates the Fair Housing Act), certiorari denied, 488 U.S. 946, 109 S.Ct. 376, 102 L.Ed.2d 365.

case, where the familiar procedure set forth in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668, is appropriate. See *In re Pan American World Airways, Inc.*, 905 F.2d 1457, 1460 (11th Cir.1990) (recognizing a distinction between "facial" disparate treatment cases and "pretextual" disparate treatment cases); *Burlew v. Eaton*, 869 F.2d 1063, 1065 n. 4 (7th Cir.1989) (noting the distinction between disparate treatment cases involving corporate policies and those involving individualized decisionmaking). The *McDonnell Douglas* procedure is inapt in a situation involving a facially discriminatory policy, as is the case here. *Hardin*, 691 F.2d at 1369 n. 16.

Reidt cites *Dothard v. Rawlinson*, 433 U.S. 321, 97 S.Ct. 2720, to support her argument that the disparate impact theory is applicable. This case, however, confirms that disparate treatment is the proper theory for analyzing the issues involved here. The Court in *Dothard* addressed two separate questions. Reidt points to the first issue, whether height and weight restrictions on prison guards in Alabama had a disparate impact on females. However, the other issue in *Dothard,* relating to Alabama's decision to employ only male guards in certain prisons, is more similar to the Department's use of single-sex positions. The Court in *Dothard* did not apply disparate impact analysis to this second, more pertinent issue, because "[u]nlike the statutory height and weight requirements, Regulation 204 explicitly discriminates against women on the basis of their sex." *Id.* at 332, 97 S.Ct. at 2728.[6]

Disparate impact is also inappropriate here because Reidt does not point to any persons in a situation similar to hers. The Department's motion to deny certification of a class was granted after Reidt failed to respond to it. "[D]iscriminatory impact cannot be established where you have just one isolated decision." *Coe v. Yellow Freight System, Inc.*, 646 F.2d 444, 451 (10th Cir.1981).

■ Finally, Reidt has waived any disparate impact claim. The record reveals that no disparate impact cases were brought before the court in either Reidt's response to the Department's motion for summary judgment or in her pre-trial brief. Reidt points to a statement in her complaint regarding the discriminatory "effect" of the defendants' practices, but this does not relieve Reidt of the minimal responsibility of identifying the applicable law and arguing why the facts revealed at trial fit into the parameters of that law. The district court never made any findings regarding disparate impact. After the trial, however, it dismissed any disparate impact claim without prejudice, even though it seemed clear that Reidt had waived any claim based on that theory. In her motion for leave to amend her complaint and for supplementary proceedings, Reidt did not attempt to show how disparate impact applied to her case.

To reiterate, Reidt raises no issue relating to the district court's disposition of her disparate treatment claim. She only argues on appeal that the disparate impact theory should be applied to her case. Therefore we need not decide whether reversal of the district court's disparate treatment findings might be warranted. As noted above, Reidt waived her disparate impact claim in district court. In any event, the disparate impact theory is inappropriate for this case. It was therefore not error for the district court to dismiss any disparate impact claims with prejudice when asked by Reidt to allow amendment of her complaint or supplementary proceedings.

Judgment is affirmed.

---

6. The Court ultimately held that this facial discrimination was lawful because, given the unusually violent Alabama prison system, sex was a BFOQ.