65 F.3d 171
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
James YORK, Plaintiff-Appellant,
v.
Jesse BROWN, Secretary, Department of Veterans Affairs,
Defendant-Appellee.
 No. 95-1550.
 United States Court of Appeals, Seventh Circuit.
 Argued Aug. 2, 1995.
Decided Aug. 30, 1995.
 
 Before BAUER, COFFEY and MANION, Circuit Judges.
 
 ORDER
 
 1
 James York brought a race discrimination action against the Secretary of the Department of Veterans Affairs pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e-2 (1988),[1] after he was denied two promotions at the Hines Veterans Affairs Medical Center ("Hines") in Hines, Illinois. The magistrate judge granted summary judgment in favor of the defendant. On appeal, York contends that the magistrate judge erred in finding that York failed to present any evidence to dispute the defendant's proffered reasons for promoting other individuals over him. We affirm.
 
 
 2
 York, a black male, has worked at Hines since 1974 and is currently employed as a Housekeeping Aid Foreman in the Environmental Management Service at Hines. His duties include the supervision of seven or eight individuals to ensure that adequate linens are available and to secure and protect patients' valuable property. In 1991, York was paid on an hourly scale for blue collar employees, at the level of WS-2, step 5. That year he earned a Masters of Business Administration degree.
 
 
 3
 The Environmental Management Service ("EMS") is responsible for the consolidated operation of sanitation, interior design, laundry and linen at three different hospitals including Hines as well as discharge cleaning, specialty cleaning, and other duties as directed by the hospital administrator. In October 1991, Eric Jennings, a white male, worked as the staff assistant at EMS, a GS-11 position. Although originally a GS-9 position, the staff assistant function was later reclassified when the Veterans Administration in Washington, D.C. assigned Jennings additional quality control duties. Mary Ann Inda, a white female, was employed as a program assistant, a GS-7 position. Upper management in EMS at Hines included the positions of chief, deputy chief, staff assistant and program assistant.
 
 
 4
 In October 1991, the EMS chief temporarily left Hines. To compensate for his absence, deputy chief Walter Moss became acting chief. On October 21, Jennings temporarily assumed the position of deputy chief and Inda took over as staff assistant. All three temporary promotions were not to exceed 120 days. In November, Hines announced vacancies for two temporary positions not to exceed one year. Announcement 91-197 was for the position of assistant hospital housekeeping officer (or deputy chief), a GS-12 position. The notice stated that eligible candidates would have at least one year of specialized experience equivalent to a GS-11 level. Announcement 91-198 was for the position of assistant hospital housekeeping officer (or staff assistant) at the GS-9 level. All candidates needed at least one year experience equivalent to a GS-7 position. York applied for both positions.
 
 
 5
 Willa Henry, a staffing specialist in the personnel department at Hines determined that York did not have the equivalent requisite experience at the GS-11 level to be eligible for the deputy chief position. Eric Jennings filled the vacancy. The personnel department found York and Inda eligible for the staff assistant position and Jennings interviewed both candidates for the vacancy. At his deposition, Jennings indicated that he recommended Inda for the position because she had a basic understanding of the relevant policies, procedures, and guidelines and that York did not. He also considered the fact that Inda was "directly in line to the position." York challenges the reasons Jennings has given for his recommendation. Walter Moss, acting chief of EMS, selected Inda to fill the staff assistant vacancy based on Jennings' recommendation.
 
 
 6
 York filed a complaint alleging that he was denied both promotions based on his race. He argued that the system used to promote individuals at Hines was facially neutral but in fact denied opportunities to blacks disproportionately to whites. He also claimed that he was more qualified than Inda for the staff assistant position and that Hines' reason for hiring her, that she "interviewed better," was actually a pretext for race discrimination. Finally, he argued that he was denied the promotion to deputy chief despite his superior qualifications, experience, and veteran status because of race.
 
 
 7
 The magistrate judge granted defendant's motion for summary judgment and denied York's cross motion for summary judgment. On appeal, York pursues only the claim relating to the deputy chief position, Announcement 91-197, under the disparate impact theory and the discrimination claim relating to the staff assistant position, Announcement 91-198, under the disparate treatment theory. We review the magistrate judge's decision to grant summary judgment de novo. Courtney v. Biosound, Inc., 42 F.3d 414, 418 (7th Cir.1994).
 
 Disparate Impact Claim
 
 8
 York alleges that Hines' practice of promoting white employees to a higher salary grade through a noncompetitive advancement system results in the eventual promotion of a substantially disproportionate number of white employees to even higher-paid positions through a competitive process because these employees have then met the time-in-grade requirements usually required for these positions. He also claims that Hines employs a "totally subjective interview system which can overrule ... all objective qualifications of candidates." Specifically, he contends that Jennings was initially promoted in a noncompetitive manner to grade GS-11 which allowed him to meet the time-in-grade requirement for the deputy chief position.
 
 
 9
 A race discrimination claim under the disparate impact theory involves allegations that a facially neutral test or practice affects members of a protected class in a significant discriminatory manner. Reidt v. County of Trempealeau, 975 F.2d 1336, 1340 (7th Cir.1992); Gilty v. Village of Oak Park, 919 F.2d 1247, 1254 (7th Cir.1990). Discriminatory intent need not be proven. Gilty, 919 F.2d at 1254. To establish a prima facie case under this theory, the plaintiff must first identify a specific employment practice and then demonstrate that the application of this employment practice causes a substantial disproportionate impact on the protected class. 42 U.S.C. Sec. 2000e-2(k) (1988 & Supp. III 1991); see also Wards Cove Packing Co., Inc. v. Atonio, 490 U.S. 642, 656 (1989); Equal Employment Opportunity Commission v. Chicago Miniature Lamp Works, 947 F.2d 292, 302 (7th Cir.1991). Accordingly, the plaintiff cannot rely solely on evidence indicating that nonwhites are underrepresented in the at-issue jobs; rather he must demonstrate the racial disparity of the pool of qualified applicants as compared to the at-issue jobs. Id. at 657. This causation requirement is equally applicable where the promotion system is based on subjective (i.e. discretionary) or objective factors. Watson v. Fort Worth Bank and Trust 487 U.S. 977, 991 (1988).
 
 
 10
 The magistrate judge concluded that York had failed to present any statistical proof supporting his charge that the one year, GS-11 grade level experience requirement for the deputy chief position had a disproportionate impact on black applicants. In addition, York made no effort to establish the number of white versus nonwhite employees who are given noncompetitive promotions to a higher GS-level position or who are advanced as a result of a subjective interview system. Instead, he relies solely on the statistical disparity between whites and nonwhites employed at the various grade levels. These statistics show only that blacks employed in higher-paying positions at Hines are underrepresented compared to the total number of blacks employed at Hines; they do not show that the challenged employment practices in any way affect or have caused this racial disparity. Gilty, 919 F.2d at 1254-55. Cf. Council 31, American Federation of State, County and Municipal Employees v. Ward, 978 F.2d 373, 379 (7th Cir.1992) (statistics showing the racial composition of defendant agency's statewide offices were relevant to plaintiff's claim that the high concentration of black employees in the Chicago office was the determinate factor in concentrating layoffs in that office).
 
 
 11
 Because there is no evidence of causation presented, the magistrate judge properly concluded that York failed to establish a prima facie case of race discrimination under the disparate impact theory.
 
 Disparate Treatment Claim
 
 12
 Next, York claims that he was denied the position of staff assistant despite his superior qualifications because of his race. York does not present any direct evidence of race discrimination and relies instead on the burden-shifting method of proof set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) to prove that Hines intentionally discriminated against him when the hospital failed to promote him. To establish a prima facie case of race discrimination, York must show by a preponderance of the evidence that he is a member of the protected group, that he was qualified for the position sought, that he was rejected for the position and that the defendant promoted a person of a different race but whose qualifications were similar or less than those of the plaintiff. Kirk v. Federal Property Management Corp., 22 F.3d 135 (7th Cir.1994); Von Zuckerstein v. Argonne Nat'l Laboratory, 984 F.2d 1467, 1472-73 (7th Cir.), cert. denied, 114 S.Ct. 419 (1993).
 
 
 13
 Once a prima facie case is established, the burden of production then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 252 (1981). If a legitimate explanation is provided, the presumption of discrimination dissolves, and the burden shifts back to the plaintiff to show that the employer's proffered reasons are a pretext for race discrimination. Id. at 254. The ultimate burden of persuasion remains with the plaintiff. St. Mary's Honor Center v. Hicks, 113 S.Ct. 2742, 2749 (1993). To defeat a summary judgment motion, the employee need only produce enough evidence from which a rational factfinder could infer that the company's proffered reasons were pretextual. Russell v. Acme-Evans Co., 51 F.3d 64, 67 (7th Cir.1995).
 
 
 14
 The parties do not dispute the magistrate judge's finding that York established a prima facie case of discrimination. Instead, the inquiry is whether York provided any evidence to challenge Hines' reasons for promoting Inda rather than York. Hines contends that Inda was chosen over York because she was directly in line for the position (having worked as a staff assistant for six years) and that she had a "basic understanding of the policies, procedures and guidelines that govern service operations; a basic understanding of the services role within the larger scope of the hospital; and a basic understanding of the communication process as used throughout the hospital; and a basic understanding of the hospital's management structure." The emphasis on Inda's comprehensive understanding of the hospital's management structure and her knowledge of the procedures and guidelines relevant to the position is consistent with the requirements listed in the job description.[2] Cf. Courtney, 42 F.3d at 421 (employer's selection of younger job candidate because of his superior communication skills and clinical trial experience raised inference of pretext because the job advertisement made no mention of these qualifications). According to Jennings, who conducted the interviews of both candidates, York did not possess this knowledge and therefore was not as well-suited for the position.
 
 
 15
 York does not present any evidence to suggest that the proffered reasons are untruthful. See Russell, 51 F.3d at 68. Instead, he argues that he was more qualified than Inda because of his longer years of service at Hines, his veteran status,[3] and the fact that he obtained a masters degree in business administration whereas Inda obtained only a high school equivalency degree. For purposes of establishing a race discrimination claim, however, it is irrelevant that in York's opinion, Hines did not correctly evaluate the applicants' relevant experience. Rather, the inquiry is whether Hines truly believed the reasons it provided for its failure to promote York or whether the actual motivation behind the employment action was race.
 
 
 16
 Jennings and Moss considered Inda's job-specific knowledge and skills more important than York's superior, although general, educational background. Indeed, Inda was temporarily performing in the capacity of a staff assistant at the time she interviewed for the position and had worked in the position directly underneath the staff assistant for six years. York never intimates that Inda did not have the specific, job-related knowledge and skills imputed to her by Jennings. Nor does he offer any evidence other than his years of service and business degree to show that he possessed similar skills. Moreover, York's claim that he was not promoted because he had a "bad interview" even if true does not raise the inference that he was discriminated against because of his race. Without the presentation of any other evidence, York has not raised a genuine issue of material fact regarding the pretextual nature of Hines' reasons for promoting Inda rather than York.
 
 
 17
 For the foregoing reasons, the magistrate judge's decision granting summary judgment is AFFIRMED.
 
 
 
 [1]
 Section 2000e-2 states:
 (a) It shall be an unlawful employment practice for an employer--
 (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
 (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.
 
 
 [2]
 The announcement stated that candidates would be evaluated based on their ability to communicate, both orally and in writing; their ability to analyze, comprehend, and apply a variety of data or information; their knowledge of regulations and standards of various regulatory, accreditation, and credentialing groups; and their knowledge of VA Health Care Delivery System, Facility Resources and programs in relationship to Hospital Sanitation and Laundry Standards and procedures
 
 
 [3]
 The job announcement stated that it was a solicitation for applications for competitive promotion consideration but that the right to consider or select applicants from other recruitment sources including special appointing authorities such as those for disabled veterans or veterans readjustment appointment eligibles was unrestricted. However, York does not cite any case law, statute or federal regulation or make any legal argument to show that he is eligible for certain veterans programs, see e.g. 38 U.S.C. Sec. 4214, or that his status as a veteran should have been considered in Hines' employment decision