

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-18-1996

# Healey v. Southwood

Precedential or Non-Precedential:

Docket 95-3138

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation

"Healey v. Southwood" (1996). *1996 Decisions.* Paper 218.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/218

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 95-3138


BRENDA L. HEALEY,
                    Appellant

v.

SOUTHWOOD PSYCHIATRIC HOSPITAL,
a Pennsylvania Corporation;
LAKEWOOD PSYCHIATRIC,
a Pennsylvania Corporation


On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 94-cv-00243)


Submitted Pursuant to Third Circuit LAR 34.1(a)
January 25, 1996

BEFORE:  COWEN and SAROKIN, Circuit Judges and
         POLLAK, District Judge*

(Filed  March 18, l996)


Colleen E. Ramage
Ramage & Valles
429 Forbes Avenue
Allegheny Building, Suite 800
Pittsburgh, PA  15219-1604

        COUNSEL FOR BRENDA L. HEALEY
        Appellant


Margaret F. Houston
Houston Harbaugh
Two Chatham Center


*Honorable Louis H. Pollak, Senior United States District Judge
for the Eastern District of Pennsylvania, sitting by designation.


1

12th Floor
Pittsburgh, PA  15219

       COUNSEL FOR SOUTHWOOD PSYCHIATRIC HOSPITAL,
       a Pennsylvania Corporation
       Appellee

       LAKEWOOD PSYCHIATRIC,
       a Pennsylvania Corporation
       Appellee


OPINION


COWEN, <u>Circuit Judge</u>.


Brenda L. Healey appeals the order of the district court granting Southwood Psychiatric Hospital's motion for summary judgment on her sex discrimination claim brought under Title VII of the Civil Rights Act of 1964, <u>codified as amended at</u> 42 U.S.C. §2000e <u>et.</u> <u>seq.</u> Because we find that Southwood has established a bona-fide occupational qualification defense to Healey's Title VII claim, we will affirm the order of the district court.

**I.**

The following facts are not substantially disputed. Healey was hired as a child care specialist at Southwood in October 1987. In this capacity, she was responsible for developing and maintaining a therapeutic environment for the children and adolescents hospitalized at Southwood. Southwood's

2

patients are emotionally disturbed, and some have been sexually abused. In November 1992, Healey was assigned to the night shift at Southwood as a result of a staff reorganization. The reorganization was necessitated by reason of a decline in the patient population. The night shift is a less desirable shift, requiring more housekeeping chores and less patient interaction and responsibility.

Southwood has a policy of scheduling both males and females to all shifts, and considers sex in making its assignments. In November 1992, Southwood assigned Healey to the night shift because it needed a female child care specialist on that shift. Southwood maintains that its gender-based policy is necessary to meet the therapeutic needs and privacy concerns of its mixed-sex patient population. Healey counters that gender should not play any role in the hiring and scheduling of employees, and Southwood's actions towards her constitute sex discrimination in violation of Title VII. The district court granted Southwood's motion for summary judgment from which Healey appeals.

## II.

The district court had jurisdiction under 28 U.S.C. §1331, and we exercise appellate jurisdiction pursuant to 28 U.S.C. § 1291. "When reviewing an order granting summary judgment we exercise plenary review and apply the same test the district court should have applied." Armbruster v. Unisys Corp., 32 F.3d 768, 777 (3d Cir. 1994). Under Federal Rule of Civil

Procedure 56(c), that test is whether there is a genuine issue of material fact and, if not, whether the moving party is entitled to judgment as a matter of law.  In so deciding, the court must view the facts in a light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor.  Fed. R. Civ. P. 56(c).

## III.

### A.

In bringing a Title VII sex-discrimination claim, two different theories of liability are available to the plaintiff: disparate treatment and disparate impact.  The disparate treatment theory can be further subdivided into two subtheories: facial discrimination and pretextual discrimination.  See Reidt v. County of Trempealeau, 975 F.2d 1336, 1341 (7th Cir. 1992) (distinguishing between a facially discriminatory employment policy and a "pretextual" disparate treatment case); In re Pan American World Airways, Inc., 905 F.2d 1457, 1460 (11th Cir. 1990); see generally, RODNEY A. SMOLLA, FEDERAL CIVIL RIGHTS ACTS, § 9.03 (3d ed. 1995).  A different affirmative defense may be offered to counter each of these theories of liability.  In a disparate treatment case, the defendant's affirmative defense is that its policy, practice, or action is based on a "Bona-Fide Occupational Qualification," ("BFOQ").  In a disparate impact case, on the other hand, the appropriate defense is that of business necessity.  See International Union, United Auto., Aerospace & Agric. Implement Workers, UAW v. Johnson Controls,

4

<u>Inc.</u>, 499 U.S. 187, 198-200, 111 S. Ct. 1196, 1203-04 (1991) (noting different applications of BFOQ and business necessity defenses and holding that BFOQ defense, not the business necessity defense, is appropriate standard for disparate treatment cases); <u>see</u> <u>also</u> <u>Grant v. General Motors Corp.</u>, 908 F.2d 1303, 1307 (6th Cir. 1990) ("overt discrimination and the statutorily-defined BFOQ defense must be analytically distinguished from <u>Griggs</u>-type disparate impact and the accompanying judicially-created business necessity defense").

The district court did not address Healey's disparate impact claim in dismissing her complaint. Healey argues both disparate treatment and disparate impact theories are applicable to her case. We disagree that disparate impact is applicable. Southwood uses sex as an explicit factor in assigning its staff to the various shifts, and Healey was assigned to the night shift because of her sex. Under a disparate impact theory, liability is established when a facially neutral policy affects members of a protected class in a significantly discriminatory manner. <u>Dothard v. Rawlinson</u>, 433 U.S. 321, 329, 97 S. Ct. 2720, 2726-27 (1977). Here, Southwood's staffing policy is facially discriminatory,' rather than facially neutral. Analysis under

---

'Judge Sarokin would describe Southwood's scheduling policy as "facially gender-based" rather than "facially discriminatory" for the following reason. Use of the term "discriminatory" connotes that the policy is "characterized by or exhibiting prejudices, racial bias, or the like," <u>The Random House College Dictionary</u> 379 (revised ed. 1980); it connotes intent. Because the court concludes that Southwood's policy is motivated not by a discriminatory intent but by a bona fide occupational qualification, Judge Sarokin believes that referring to the policy as "discriminatory" is inappropriate.

5

disparate impact is not appropriate where plaintiff claims injury based on a facially discriminatory policy. <u>Reidt v. County of Trempealeau</u>, 975 F.2d 1336, 1340 (7th Cir. 1992). Therefore, since this case involves a facially discriminatory employment policy, not a facially neutral one, disparate impact is not appropriate to this case.

On Healey's disparate treatment claim, the district court applied the shifting burdens of proof under <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 93 S. Ct. 1817 (1973), and concluded that Healey had failed to establish that Southwood's BFOQ defense was pretextual. However, Southwood's gender-based policy is not a pretext for discrimination--it is per se intentional discrimination. This type of disparate treatment case should be distinguished from the more typical disparate treatment case, pretextual discrimination, where the familiar procedure set forth in <u>McDonnell Douglas</u> is appropriate. The <u>McDonnell Douglas</u> test is inapt in this case which involves a facially discriminatory policy. <u>See</u> <u>Reidt v. County of Trempealeau</u>, 975 F.2d 1336, 1341 (7th Cir. 1992)(noting distinction between "facial" disparate treatment cases and "pretextual" disparate treatment cases); <u>In re Pan American World Airways, Inc.</u>, 905 F.2d 1457, 1460 (11th Cir. 1990) (same); <u>Chambers v. Omaha Girls Club, Inc.</u>, 834 F.2d 697, 704 n.18 (8th Cir. 1987) (per se intentional discrimination eliminates the <u>McDonnell Douglas</u> burden-shifting procedure).

Without using the <u>McDonnell Douglas</u> shifting burdens of proof, Healey may still establish sex discrimination under Title

6

VII. In fact, Healey has shown sex discrimination by establishing the existence of a facially discriminatory employment policy. Title VII expressly states that "[it] shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex[.]" 42 U.S.C. § 2000(e). Thus, Title VII sets forth a sweeping prohibition against overt gender-based discrimination in the workplace. See, e.g., City of Los Angeles Dep't of Water and Power v. Manhart, 435 U.S. 702, 98 S. Ct. 1370 (1978). When open and explicit use of gender is employed, as is the case here, the systematic discrimination is in effect "admitted" by the employer, and the case will turn on whether such overt disparate treatment is for some reason justified under Title VII. See RODNEY A. SMOLLA, supra, at §9.03[6][a]. A justification for overt discrimination may exist if the disparate treatment is part of a legally permissible affirmative action program, or based on a BFOQ. Id.

Southwood asserts that its gender-based staffing policy is justified as a bona fide occupational qualification, and therefore is exempt under Title VII. Under the BFOQ defense, overt gender-based discrimination can be countenanced if sex "is a bona fide occupational qualification reasonably necessary to the normal operation of [a] particular business or enterprise[.]" 42 U.S.C. § 2000e-2(e)(1). The BFOQ defense is written narrowly, and the Supreme Court has read it narrowly. See Johnson Controls, 499 U.S. at 201, 111 S. Ct. at 1204. The Supreme Court

7

has interpreted this provision to mean that discrimination is permissible only if those aspects of a job that allegedly require discrimination fall within the "'essence' of the particular business." Id. at 206, 111 S. Ct. at 1207. Alternatively, the Supreme Court has stated that sex discrimination "is valid only when the essence of the business operation would be undermined" if the business eliminated its discriminatory policy. Dothard v. Rawlinson, 433 U.S. 321, 332, 97 S. Ct. 2720, 2729 (1977) (quoting Diaz v. Pan American World Airways, Inc., 442 F.2d 385, 388 (5th Cir.), cert. denied, 404 U.S. 950, 92 S. Ct. 275 (1971)).

The employer has the burden of establishing the BFOQ defense. Johnson Controls, 499 U.S. at 200, 111 S. Ct. at 1204. The employer must have a "basis in fact" for its belief that no members of one sex could perform the job in question. Dothard, 433 U.S. at 335, 97 S. Ct. at 2730. However, appraisals need not be based on objective, empirical evidence, and common sense and deference to experts in the field may be used. See id. (relying on expert testimony, not statistical evidence, to determine BFOQ defense); Torres v. Wisconsin Dep't Health and Social Servs., 859 F.2d 1523, 1531-32 (8th Cir. 1988)(in establishing a BFOQ defense, defendants need not produce objective evidence, but rather employer's action should be evaluated on basis of totality of circumstances as contained in the record), cert. denied, 489 U.S. 1017, 109 S. Ct. 1133, and 489 U.S. 1082, 109 S. Ct. 1537 (1989). The employer must also demonstrate that it "could not reasonably arrange job responsibilities in a way to minimize a

8

clash between the privacy interests of the [patients], and the non-discriminatory principle of Title VII." <u>Gunther v. Iowa State Men's Reformatory</u>, 612 F.2d 1079, 1086 (8th Cir.), <u>cert. denied</u>, 466 U.S. 966, 100 S. Ct. 2942 (1980).  <u>See</u> <u>Hardin v. Stynchcomb</u>, 691 F.2d 1364, 1369 (11th Cir. 1982).

**B.**

With these precepts in mind, we may now turn to the facts of this case.  The "essence" of Southwood's business is to treat emotionally disturbed and sexually abused adolescents and children. Southwood has presented expert testimony that staffing both males and females on all shifts is necessary to provide therapeutic care.  "Role modeling," including parental role modeling, is an important element of the staff's job, and a male is better able to serve as a male role model than a female and vice versa.  A balanced staff is also necessary because children who have been sexually abused will disclose their problems more easily to a member of a certain sex, depending on their sex and the sex of the abuser.  If members of both sexes are not on a shift, Southwood's inability to provide basic therapeutic care would hinder the "normal operation" of its "particular business." Therefore, it is reasonably necessary to the normal operation of Southwood to have at least one member of  each sex available to the patients at all times.

There is authority for the proposition that a business that has as its "essence" a therapeutic mission requires the consideration of gender in making employment decisions.  In <u>City</u>

of Philadelphia v. Pennsylvania Human Relations Commission, 300 A.2d 97 (Pa. Commw. Ct. 1973), the court determined that gender may be considered in order to treat and supervise children with emotional and social problems, and approved the youth center's gender-based staffing policy under the BFOQ defense. The City of Philadelphia court stated that "[i]t is common sense that a young girl with a sexual or emotional problem will usually approach someone of her own sex, possibly her mother, seeking comfort and answers." Id. at 103. Similarly, in Torres v. Wisconsin Department of Health and Social Services, 859 F.2d 1523 (7th Cir. 1988), cert. denied, 489 U.S. 1017, 109 S. Ct. 1133, and 489 U.S. 1082, 109 S. Ct. 1537 (1989), the court determined that the essence of a maximum security prison was rehabilitation. The Torres court remanded the case to the district court for further fact-finding based on expert opinion and common-sense understanding of penal conditions in order to determine whether a female-only staffing policy was necessary to the institution's goal of rehabilitation. Still, the Torres court held that a maximum security prison's policy of employing only female corrections officers for the female inmates' living quarters could be justified to achieve the institution's rehabilitative mission. One of the reasons for the decision was the fact that a high percentage of female inmates had been physically and sexually abused by males. In this case, Southwood has established a basis in fact through expert opinion that the therapeutic aspects of the child care specialist job require the consideration of gender.

10

In addition to therapeutic goals, privacy concerns justify Southwood's discriminatory staffing policy. Southwood established that adolescent patients have hygiene, menstrual, and sexuality concerns which are discussed more freely with a staff member of the same sex. Child patients often must be accompanied to the bathroom, and sometimes must be bathed. The Supreme Court has explicitly left open the question whether sex constitutes a BFOQ when privacy interests are implicated, Johnson Controls, Inc., 499 U.S. at 206 n.4, 111 S. Ct. 1207, and the issue has been raised but not yet decided by our court. See Rider v. Commonwealth of Pennsylvania, 850 F.2d 982 (3d Cir.), cert. denied, 488 U.S. 993, 109 S. Ct. 556 (1988). We note that other circuits have discussed privacy concerns as the basis of a BFOQ defense. However, those cases involve an inmate's right to privacy which is balanced against the state's legitimate penological interest. See Nina Jordon v. Booth Gardner et. al., 986 F.2d 1521, 1524 (9th Cir. 1993) ("prisoners' legitimate expectations of bodily privacy from persons of the opposite sex are extremely limited"); Kent v. Johnson, 821 F.2d 1220, 1226 (6th Cir. 1987) (balancing privacy interests of inmates with state's interest in prison security); Gunther v. Iowa State Men's Reformatory, 612 F.2d 1079, 1086 (8th Cir. 1980) (same).

In the non-prison context, other courts have held that privacy concerns may justify a discriminatory employment policy. See AFSCME v. Michigan Council 25, 635 F. Supp. 1010 (E.D. Mich. 1986) (privacy rights of mental health patients can justify a BFOQ to provide for same-sex personal hygiene care); Fesel v.

11

<u>Masonic Home of Delaware</u>, 447 F. Supp. 1346, 1353 (D. Del. 1978) (retirement home patients), <u>aff'd mem.</u>, 591 F.2d 1334 (3d Cir. 1979); <u>Backus v. Baptist Medical Center</u>, 510 F. Supp. 1191 (E.D. Ark. 1981) (essence of obstetrics nurse's business is to provide sensitive care for patient's intimate and private concerns), <u>vacated as moot</u>, 671 F.2d 1100 (8th Cir. 1982). Even in the prison context, one court of appeals has held that privacy concerns may be the basis for excluding male corrections officers from female inmate living quarters. <u>See</u> <u>Torres</u>, 859 F.2d at 1531 ("the presence of unrelated males in living spaces where intimate bodily functions take place is a cause of stress to females").

We conclude that due to both therapeutic and privacy concerns, Southwood is an institution in which the sexual characteristics of the employee are crucial to the successful performance of the job of child care specialist. Southwood cannot rearrange job responsibilities in order to spare Healey or another female from working the night shift because at least one female and male should be available at all times in order for Southwood to conduct its business. Accordingly, we hold that the essence of Southwood's business would be impaired if it could not staff at least one male and female child care specialist on each shift.

Healey argues that Patrice Michalski's affidavit raises a genuine doubt as to the legitimacy of Southwood's BFOQ defense, and that the district court erred in weighing one expert's testimony over another. We disagree. Michalski's affidavit states that gender does not play a role in her staff's ability to

12

provide necessary care to her patients at Merck Multiple Disabilities Program at the Western Psychiatric Institute. Merck treats mentally retarded patients ranging from three to twenty-four years old whose developmental age is lower than their chronological age. Southwood's mission, in contrast, is to treat emotionally disturbed and sexually abused children and adolescents. Southwood's therapeutic mission depends on subtle interactions such as "role modeling" rather than the more concrete behavior modification techniques practiced at Merck. Therefore, the "essence" of the two institutions' business operations is different. Michalski's affidavit expresses no opinion on the staffing policies at Southwood or another institution like it which treats emotionally disturbed children and adolescents.

Moreover, to the extent that the missions of the two institutions overlap, such as when a Merck patient is "acting out sexually," or has been sexually abused, Michalski states that the gender of the staff will be considered in treating that patient. We conclude that Michalski's affidavit is not relevant to the central issue; namely, whether the essence of Southwood's business would be undermined if it could not consider sex in its staffing policy. Therefore, it does not create a disputed issue of material fact.

Healey also argues that qualified health care professionals are able to care for patients of either sex, and therefore consideration of one's gender is not necessary. Healey does not provide any expert opinion or other evidence to support

13

this assertion, and our independent review of the record finds none. We acknowledge that Healey's assertion has some surface appeal, and in most cases, men and women should be given the opportunity to perform a job for which each is equally capable and qualified. In fact, Title VII gives women the choice to take jobs that historically had been restricted by an employer's professed concern for women's health and well-being, which actually were based on gender stereotypes. See, e.g., Johnson Controls, 499 U.S. at 200, 111 S. Ct. at 1204. However, in some limited instances, the continued vitality of a business operation requires the employer to consider sex in its employment decisions. Such is the case here.

The district court erred in placing the burden of proof on Healey to establish that Southwood's BFOQ defense was pretextual. Southwood has the burden of proof in establishing a BFOQ defense. Id. The district court determined that Southwood met its burden of production in presenting a BFOQ defense. We recognize that the burden of production under the McDonnell Douglas test is a lower standard than that required to establish a BFOQ defense. Nevertheless, we will affirm the district court's grant of summary judgment in the particular circumstances of this case because Southwood has provided an overwhelming "basis in fact" for its BFOQ defense, and Healey has presented no evidence that creates a disputed issue of fact.

IV.

14

We conclude that Southwood has established a BFOQ which justifies its discriminatory employment practice. Accordingly, we will affirm the February 7, 1995, order of the district court granting summary judgment in favor of Southwood Psychiatric Hospital.