**Vickie REED, Plaintiff–Appellant,**

v.

**COUNTY OF CASEY, Commonwealth of Kentucky, Defendant–Appellee.**

No. 98–6021.

United States Court of Appeals, Sixth Circuit.

Submitted May 28, 1999.

Decided Aug. 2, 1999.

Theodore H. Lavit (briefed), Stephen B. Humphress (briefed), Theodore H. Lavit & Associates, Lebanon, Kentucky, for Plaintiff–Appellant.

Brett A. Reynolds (briefed), Kurt W. Maier (briefed), English, Lucas, Priest & Owsley, Bowling Green, Kentucky, for Defendant–Appellee.

Before: MERRITT and DAUGHTREY, Circuit Judges; TARNOW, District Judge.*

MERRITT, Circuit Judge.

Plaintiff Vickie Reed was a deputy jailer at the Casey County (Kentucky) Jail. She filed suit in federal district court seeking to recover damages from Casey County for injuries and damages she allegedly sustained as a result of her gender-based transfer from the first work shift (8:00am–4:00pm) to the third shift (midnight–8:00am). Reed alleged that her shift transfer constituted a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* She also raised pendent state law claims for a violation of the Kentucky Civil Rights Act, Ky.Rev.Stat. Ann. § 344.040 (Michie 1999); breach of implied covenant of good faith and fair dealing; negligent training and supervision; and intentional infliction of emotional distress. The district court granted summary judgment to defendant Casey County, dismissing plaintiff's claims under Title VII. The court also refused to exercise pendent jurisdiction over Reed's pendent state law claims and thus dismissed them without prejudice. This appeal ensued. For the

---

\* The Honorable Arthur J. Tarnow, United States District Judge for the Eastern District of Michigan, sitting by designation.

following reasons, the judgment of the district court is affirmed.

\* \* \*

In November 1995, Tommy Miller was elected Jailer of Casey County. At that time, plaintiff Reed was already employed as a deputy at the jail, where she first began working in 1981, with a recess from 1986–1990. When she returned to work at the Jail in 1991, she was hired by her mother, Mildred Brown, who was the Jailer at the time. During her employment at the Jail, Reed always worked the first shift.

According to the Kentucky Department of Corrections' regulations, a female prisoner may not be lodged in a county jail unless a female deputy is present to provide supervision. This regulation is explicitly incorporated into the Casey County Jail's Policies and Procedures Manual. *See* JA 44, 46 (*"Management of Female Inmates*: When female inmates are lodged in the Casey County jail, the jail shall provide a female deputy to perform 24–hour awake supervision."). When Tommy Miller began operating the Jail, the majority of female prisoners who were booked were brought into the jail during the third shift, that is, between the early morning hours of midnight and 8:00 am. There was no female deputy working on the third shift. As a result, whenever a female prisoner was brought in on the third shift, either Miller himself or one of his deputies would have to leave their home during the third shift, come to the Jail, and transport the female prisoner to a jail in one of two nearby counties that housed female prisoners. Such action was necessary in order to comply with the Kentucky Department of Corrections regulation. Whenever this occurred, Casey County had to pay overtime wages to the deputy who transported the female prisoner(s) to the neighboring county jail. That deputy would then have to work his regular shift the next day. This arrangement cost the county in terms of both additional expenditures and reduced efficiency resulting from fatigued deputies working their regular shifts. The situation was no less complicated before Miller took over as Jailer. During Mildred Brown's tenure, a male deputy always worked the third shift alone. Whenever a female prisoner was booked in the jail between midnight and 8:00am, the male deputy on duty would phone Brown at home so that she could come spend the night in the jail in order to comply with the State's regulation. In those instances, Brown would stay at the jail until her daughter reported to work on the first shift. If for some reason Brown could not remain at the jail, either she or one of the deputies would transport the female prisoner to a neighboring county jail that had the personnel available to house the female prisoner.

Well aware of the logistical gymnastics required to satisfy the state law with respect to the supervision of female prisoners, Tommy Miller took affirmative steps to address the situation. In February 1996, Miller announced new shift assignments. In particular, plaintiff was moved from the first shift to the third shift in order to accommodate the Jail's need for an on-duty female deputy when female prisoners were booked during the third shift. This schedule change did not affect plaintiff's job title, her salary, her benefits, or her job responsibilities. Nevertheless, plaintiff refused to work the third shift and quit her job. After repeated efforts over the course of several months to hire another female deputy jailer for the third shift, Miller was finally able to do so. There is no debate with respect to Miller's motivation for transferring plaintiff to the third shift. He readily admits that his decision was based solely on Reed's gender, as the jail needed female supervision during the third shift in order to comply with Kentucky state law.

\* \* \*

Title VII of the Civil Rights Act of 1964 provides, in pertinent part, that "[it] shall be an unlawful employment practice for an employer ... to discriminate against any

individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's ... sex[.]" 42 U.S.C. § 2000e. In the instant matter, plaintiff asserts a Title VII sex-discrimination case based upon a facially discriminatory employment policy. Indeed, defendant Casey County readily admits that Miller used gender as the motivating factor in reassigning Reed to the third shift. In *Healey v. Southwood Psychiatric Hospital,* 78 F.3d 128 (3d Cir. 1996), the Third Circuit made clear that "[w]hen open and explicit use of gender is employed, as is the case here, the systematic discrimination is in effect 'admitted' by the employer, and the case will turn on whether such overt disparate treatment is for some reason justified under Title VII." *Id.* at 132. Title VII permits overt discrimination if the disparate treatment is part of a legally permissible affirmative action program, or based on a bona fide occupation qualification ("BFOQ"). The Act provides:

> Notwithstanding any other provision of this [title], (1) it shall not be an unlawful employment practice for an employer to hire and employ employees ... on the basis of his religion, sex, or national origin in those certain instances where religion, sex, or national origin is a bona fide occupational qualification reasonably necessary to the normal operation of that particular business.

42 U.S.C. § 2000e–2(e). Thus, under the BFOQ defense, facial gender-based discrimination is permitted if gender "is a bona fide occupational qualification reasonably necessary to the normal operation of [a] particular business or enterprise." *Id.* § 2000e–2(e)(1). In *International Union v. Johnson Controls, Inc.,* 499 U.S. 187, 221–22, 111 S.Ct. 1196, 113 L.Ed.2d 158 (1991), the U.S. Supreme Court interpreted the BFOQ exception to mean that discrimination is permissible only if those aspects of a job that allegedly require discrimination fall within the "essence of a particular business." *Id.* at 206, 111 S.Ct. 1196. In other words, gender discrimination is valid "when the essence of the business operation would be undermined if the business eliminated its discriminatory policy." *Dothard v. Rawlinson,* 433 U.S. 321, 332, 97 S.Ct. 2720, 53 L.Ed.2d 786 (1977). In the instant matter, the district court found that Tommy Miller's decision to place Reed on the third shift was justified as a BFOQ and is therefore exempt under Title VII.[1] We agree.

The "essential nature" of the Casey County Jail is to lodge, keep, transport, feed and care for prisoners. In so doing, the jail *must* abide by state regulations established by the Kentucky Department of Corrections, one of which requires a female jailer to be present when a female prisoner is lodged in the jail. Despite her protestations that the third shift presents unreasonable danger for a female deputy, plaintiff Reed was not the first female deputy ever to work the third shift. In fact, Mildred Brown, Reed's own mother, had worked the early morning shift for some time without incident. Immediately prior to the plaintiff being transferred to the third shift, however, there were no female deputy jailers working the third shift. This situation resulted in considerable inefficiencies and additional expenses for the Jail. Indeed, in light of the Department of Corrections' regulation, transferring the plaintiff to the third shift was vital to the proper and legal functioning of the Casey County Jail. The "essence" of the jail's function and business operations was being, and would continue to have been, undermined without the presence of the plaintiff or another female on the third

---

1. The BFOQ exception to Title VII applies to numerous employment decisions, including, *inter alia,* the transfer of an employee to another shift. *See Moteles v. University of Pa.,* 730 F.2d 913, 920 (3d Cir.1984) ("[A]n enterprise may legally exclude a person from a position either on the initial hiring or by transfer during the term of employment."); *id.* ("[T]ransfering or refusing to transfer are both encompassed within the meaning of 'employ.'").

shift. There is no doubt that the plaintiff's gender was manifestly related to the jail's ability to lodge and/or transport female prisoners in compliance with state law. The district court thus concluded that the plaintiff's gender was a bona fide occupational qualification and that Casey County had no other reasonable alternative but to transfer the plaintiff, an action that was "reasonably necessary to the normal operation of the jail." JA 21.

Defendant Casey County has the burden of establishing that no reasonable alternatives existed other than transferring the plaintiff to the third shift. *See Healey v. Southwood Psychiatric Hosp.*, 78 F.3d 128, 132 (3d Cir.1996). As the district court duly noted, Casey County had three possible alternatives from which to choose in order to comply with the State Department of Correction's regulation. First, it could have continued the policy that was in place before Miller's arrival and had a deputy jailer immediately transport any female prisoner booked during the third shift; second, the Jail could have called the plaintiff at home and had her come to the Jail and spend the night with the prisoner; or third, the Jail could (and did) transfer the plaintiff to the third shift in order to avoid the additional costs and inefficiencies associated with the first two options.

While Miller, as County Jailer, could have chosen an alternative solution to the problem confronting the Jail, neither of the first two options was very good. The first, transporting female prisoners to neighboring counties in the middle of the night, placed financial strains on the Jail when it was forced to pay overtime and caused fatigue to the deputy jailer overseeing the transfer, who then had to work the next day. The second option was an option in theory alone. Unlike Miller's predecessor, Mildred Brown, who was personally willing to work the third shift when a female was booked, Tommy Miller did not have that alternative, nor could he reasonably call upon the plaintiff for assistance, as she admitted to never even once having willingly assisted the Jail in a time of need during the third shift. On the only occasion that Miller requested that she assist him on that shift, plaintiff protested and made abundantly clear that her assistance could not be relied upon in the future. Miller thus had no choice but to reassign the plaintiff permanently to the third shift in order to satisfy the legal prohibition against male deputy jailer supervising female prisoners alone and to comply economically and efficiently with the Kentucy Department of Corrections Regulation.

For the foregoing reasons, the judgment of the district court granting defendant's Motion for Summary Judgment and dismissing the plaintiff's pendent state law claims without prejudice is AFFIRMED.